FILED by [signature] D.C.
MAR - 2 2009
STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. - MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No._________ -Civ

**09-20510**

**CIV - GOLD** MCALILEY

KARIN VICKERS, FELIX MARTINEZ, JENNY MARTINEZ, JASON SANTIAGO, GENE RAPHAEL, WALTER NIEMCZURA, and JIM TARZY, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

KNAUF GIPS KG, a German Corporation, KNAUF PLASTERBOARD (TIANJIN) CO., LTD., a Chinese limited liability corporation, KNAUF PLASTERBOARD (WUHU) CO. LTD., KNAUF PLASTERBOARD (DONGGUAN) CO. LTD., BANNER SUPPLY CO., a Florida corporation, ROTHCHILT INTERNATIONAL LTD., a foreign corporation, TAYLORWOODROW COMMUNITIES AT VASARI, L.L.C., ~~MORRISON, INC~~., a Florida corporation, TOUSA HOMES, INC., f/k/a ENGLE HOMES, a Florida corporation, and SOUTH KENDALL CONSTRUCTION, CORP., a Florida corporation,

Defendants

__________________________________________/

## COMPLAINT--CLASS ACTION

Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this class action on behalf of themselves and all other similarly situated owners and residents of residential homes in the State of Florida containing drywall that is inherently defective because it emits various sulfide gases and/or other chemicals through "off-gassing" that causes property damage and potential health hazards. The drywall has been manufactured, exported, imported, distributed, delivered, supplied, inspected,



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

marketed, and/or sold by Defendants, Knauf Gips KG ("Knauf Gips"); Knauf Plasterboard (Tianjin) Co., LTD ("Knauf Tianjin"); Knauf Plasterboard (Wuhu) Co. LTD ("Knauf Wuhu"); Knauf Plasterboard (Dongguan) Co. LTD ("Knauf Dongguan") (all Knauf-related entities are collectively referred to herein as "Knauf"); Banner Supply Co. ("Banner Supply"), Rothchilt International Ltd. ("Rothchilt), and present in homes built by Defendants Taylor Woodrow Communities at Vasari, L.L.C. (Taylor Woodrow), Tousa Homes, Inc. ("Tousa"), South Kendall Construction Corp., ("South Kendall Construction"), other developers, and their subsidiaries, divisions and/or agents, and in support thereof, state as follows:

## INTRODUCTION

1. Defendants' drywall used in the homes of Plaintiffs and the Plaintiff Class Members is inherently defective because it emits various sulfide gases and/or other chemicals through "off-gassing" that creates noxious, "rotten egg-like" odors, and causes corrosion ("the Defect") of air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property").
2. This Defect is latent and existed in Defendants' drywall at the time of installation regardless of the way the product was installed, maintained, and/or painted. There is no repair that will correct the Defect.
3. As a result of Defendants' conduct as alleged herein, Plaintiffs and thousands of others Class Members in Florida have suffered economic losses by owning homes containing inherently defective drywall that has caused damage to their homes and Other Property.
4. Plaintiffs and Class Members have incurred or will incur tens of thousands of dollars in damages including, but not limited to: repair/replacement of homes, Other Property, any



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

materials contaminated or corroded by the drywall as a result of "off-gassing," incidental and consequential damages.

5. Further, as a result of Defendants' conduct as alleged herein, Plaintiffs and thousands of others Class Members in Florida have suffered harm and/or been exposed to an increased risk of harm and thus have need for injunctive and/or equitable relief in the form of emergency notice, environmental monitoring, and medical monitoring.

6. Plaintiffs bring this action on behalf of a Class of all similarly situated owners and residents of residential homes in the State of Florida that contain defective, hazardous, or dangerous drywall manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants.

7. Plaintiffs bring additional subclasses against the builder/developers of the affected homes.

## JURISDICTION, PARTIES, AND VENUE

8. This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act. Plaintiffs and Defendants are citizens of different states and the amount in controversy of this Class action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

9. Venue in this district satisfies the requirements of 28 U.S.C. §1391(b)(1-2) because at least one of the Defendants resides in this jurisdiction and a substantial amount of the events and occurrences giving rise to the claim occurred in this District, or a substantial part of the property that is the subject of this action is situated in this district.

/////

/////



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

## PLAINTIFFS

### The "South Kendall Construction" Plaintiffs

10. Plaintiff Karin Vickers is a resident of Miami-DadeCounty, Florida, and owns a home located at is 2259 SE 19th Ave. in Homestead, Florida.

11. Upon information and belief, Defendants supplied the defective drywall to one or more of the Plaintiffs in this case.

12. Upon information and belief, Defendants manufactured the defective drywall to one or more of the Plaintiffs' homes.

13. Plaintiff Karin Vickers home was built by South Kendall Construction using drywall manufactured and supplied by one or more of the Defendants.

14. Plaintiffs Felix Martinez and Jenny Martinez are residents of Miami-Dade County, Florida and own a home located at 2250 SE 19th Ave. in Homestead, Florida.

15. Plaintiffs Felix Martinez and Jenny Martinez's home was built by South Kendall Construction using drywall manufactured and supplied by one or more of the Defendants.

16. Plaintiff Jason R. Santiago is a resident of Miami-Dade County, Florida and owns a home located at 2140 SE 19th Ave. in Homestead, Florida.

17. Plaintiff Jason R. Santiago's home was built by South Kendall Construction using drywall manufactured and supplied by one or more of the Defendants.

### The "Tousa" Plaintiffs

18. Plaintiff Gene Raphael is a resident of Lee County, Florida and owns a home located at 3018 Lake Butler Court, in Cape Coral, Florida.

19. Plaintiff Gene Raphael's home was built by Tousa, formerly known as "Engle Homes" using drywall manufactured and supplied by one or more of the Defendants.



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

### The "Taylor Woodrow" Plaintiffs

20. Plaintiff Walter Niemczura is an Indiana resident.

21. Plaintiff Walter Niemczura owns a residence located at 11019 Carrara Court, Unit 102, Bonita Springs, Lee County, Florida.

22. Plaintiff's home was built by Taylor Woodrow using drywall manufactured and supplied by one or more of the Defendants.

23. Plaintiff Jim Tarzy is a New Jersey resident.

24. Plaintiff Jim Tarzy owns a residence located at 28479 Altessa Way, Unit 101, Bonita Springs, Lee County, Florida.

25. Plaintiff's home was built by Taylor Woodrow using drywall manufactured and supplied by one or more of the Defendants.

## DEFENDANTS

### Drywall Manufacturers - Knauf Entities

26. Defendant Knauf Gips is a German corporation doing business in the State of Florida with its principal place of business located at Postfach 10, D-97343 Iphofen, Germany.

27. Knauf Gips is a leading manufacturer of drywall, building materials and systems with approximately 20,000 employees worldwide.

28. Knauf has more than 130 production plants in over 40 countries generating annual sales in excess of $4.8 billion Euros.

29. In 1995, Knauf began manufacturing drywall in China. In 1997, 2000, and 2001 Knauf established three plasterboard plants located in Wuhu (Anhui province), Tianjin and Dongguan (Guangdong province), respectively.



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

30. Knauf Gips, together with its agents, subsidiaries, and/or affiliates (including Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) provides building materials and systems to customers in over 50 countries, including the United States, and more particularly, the State of Florida.

31. Knauf Gips provided defective drywall to one or more of the Plaintiffs' homes.

32. The Court has personal jurisdiction over Defendant Knauf Gips pursuant to federal law, Florida's Long-Arm Statute, and due process because:

    a. Knauf Gips has caused injury to Plaintiffs and Class Members in Florida that arose out of the acts and omissions that occurred outside of the State of Florida during the relevant period of time, namely, the negligent design and manufacturing of an unreasonably dangerous drywall that caused economic damages and potential personal injury damages to Plaintiffs and Class Members as set forth more fully herein in this matter in the State of Florida; and

    b. Knauf Gips has engaged in substantial and not isolated activity within Miami-Dade County by: 1) having shipped tons of defective drywall into the Port of Miami, located in this District; 2) having the defective drywall reach the ultimate consumer, Plaintiffs and Class Members who had the defective drywall installed in their homes; and 3) selling and marketing the defective drywall in this District and the State of Florida.

33. Knauf Gips improperly manufactured, marketed, and later distributed the subject defective drywall in the United States. Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of Chinese drywall in the United States.

34. Upon information and belief, at all material times hereto, Knauf Gips supervised, operated, trained, and otherwise exercised control and/or had the right to control the operations of



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan, and their agents, apparent agents, and employees.

35. From 1997 through 2001, Knauf Gips established three plasterboard plants located in Wuhu, Tianjin, and Dongguan, China, respectively.

36. The quality of all Knauf Gips' Chinese drywall plants in China is supervised, overseen, and controlled according to the requirements of Knauf Gips' headquarters in Germany.

37. Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan and their employees are the actual and/or apparent agents of Knauf Gips.

38. Upon information and belief, Knauf Gips, together with its agents, subsidiaries and/or affiliates (including Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold and placed within the stream of commerce drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Florida.

39. Upon information and belief, Knauf Gips by itself and/or through its agents, subsidiaries, and/or affiliates (including Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) has continuously and systematically distributed and sold drywall to numerous purchasers in the State of Florida with the knowledge that its drywall would be and is installed in numerous homes in Florida.

40. As discussed more fully below, Knauf Gips by itself and/or through its agents, subsidiaries and affiliates (including Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold, directly and indirectly, to certain suppliers in the State of Florida, including Defendants Banner Supply and Rothchilt, defective Chinese drywall that was installed in homes being



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

built in Florida, thereby causing substantial damage to Plaintiffs and Class Members in Florida.

41. Knauf Gips, each Knauf Entity, (Defendants Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) participated in the wrongful acts herein.

42. Knauf Gips, each Knauf Entity, (Defendants Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) also acted in joint enterprise, joint venture and as each other's agent within the course and scope of said agency.

43. At all times relevant hereto, Defendant Knauf Gips, each Knauf Entity, (Defendants Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) acted by and through their employees, agents, apparent agents and representatives, who were acting within the course and scope of their employment, agency, apparent agency and representation and in the furtherance of Defendants' interests.

44. Defendant Knauf Gips is the parent corporation of the Knauf Entitities (Defendants Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan). Knauf Gips individually participated, ratified, approved and directed the improper or illegal acts and omissions described herein.

**Knauf Gips' Chinese Drywall Distribution**

45. Upon information and belief, tens of millions of square feet of Defendant Knauf Gips defective drywall was used in the construction of Florida homes between 2004 and the present.

46. Because of a shortage of construction materials from a booming housing market and massive damage in the United States in 2005 caused by Hurricanes Katrina and Wilma, domestic builders, suppliers, and importers began bringing significant stocks of foreign manufactured drywall into the United States.



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

47. At least 550 million pounds of Chinese drywall came into the United States from approximately 2004 to 2006 -- enough to construct 60,000 average-size homes.

48. Nearly 60 percent of the Chinese drywall that came into the United States came in through Florida ports.

49. Miami's port received the largest number of shipments of Chinese drywall. Public records show that more than 100 million pounds of Chinese drywall were off-loaded in Miami. Other ports with significant Chinese drywall off-loading include Port Everglades (80 million pounds), Tampa, (50 million pounds), as well as Port Manatee, Pensacola, Port Canaveral, and Jacksonville.

50. At least 37 million pounds of Knauf drywall was shipped directly from three sites in China to Florida through Tampa and Port Canaveral. Knauf Tianjin sent an additional amount (characterized by company officials as "most" of its drywall) into Miami.

51. In March 2006, Knauf Dongguang shipped 11 million pounds of Chinese drywall aboard the cargo ship *Afra*. This shipment was unloaded in Port Canaveral.

52. In the spring of 2006, the cargo ship *Great Immensity* unloaded one shipment of more than 16 million pounds of Chinese drywall manufactured by Knauf Tianjin -- enough to make approximately 1,700 homes. The *Great Immensity* unloaded shipments at more than two dozen ports throughout the United States, including seven in Florida.

53. Shipping records show coordination between Knauf's Chinese subsidiaries, such as sharing the same vessel to transport their product to the U.S. In April 2006, the *Yong An Cheng* took three shipments from Knauf Wuhu and a fourth from Knauf Dongguang to the U.S. All were imported by United States Gypsum Corporation, one of the largest manufacturers of domestic drywall in the U.S. market.



**Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane**
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

54. Knauf Tianjin, one of three Knauf Gips Chinese subsidiaries, admits that it manufactured and imported at least 20% of the imported Chinese drywall that came into the United States.

55. Shipping information indicates that Knauf Tianjin sent at least 38.7 million pounds Chinese drywall to the United States in 2006 and Knauf Wuhu sent at least 28.6 million pounds of Chinese drywall. Based on U.S. Customs and Census information, these figures would indicate that 78 percent of Chinese drywall imports in 2006 came from these two Knauf plants.

56. Many builders in Florida, including Defendant Taylor Woodrow have admitted using Knauf Chinese drywall in communities throughout Florida.

**Knauf Gips' Subsidiary—Knauf Tianjin**

57. Upon information and belief, Defendant, Knauf Tianjin, is an international corporation organized under the laws of China doing business in the State of Florida with its principal place of business located at North Yinhe Bridge, East Jingjin Road, RC-300400, Tianjin, China.

58. Defendant Knauf Tianjin manufactured and distributed defective drywall that is in one or more of Plaintiffs' homes.

59. The Court has personal jurisdiction over Defendant Knauf Tianjin pursuant to federal law, Florida's Long-Arm Statute, and due process because:

a. Knauf Tianjin has caused injury to Plaintiffs and Class Members in Florida that arose out of the acts and omissions that occurred outside of the State of Florida during the relevant period of time, namely, the negligent design and manufacturing of an unreasonably dangerous drywall that caused economic damages and potential personal injury damages



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

to Plaintiffs and Class Members as set forth more fully herein in this matter in the State of Florida; and

b. Knauf Tianjin has engaged in substantial and not isolated activity within Miami-Dade County by: 1) having shipped tons of defective drywall into the Port of Miami, located in this District; 2) having the defective drywall reach the ultimate consumer, Plaintiffs and Class Member homeowners who had the defective drywall installed in their homes; and 3) selling and marketing the defective drywall in this District and the State of Florida.

60. Knauf Tianjin improperly manufactured, marketed, and distributed the subject defective drywall in the United States. Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of its defective drywall in the United States.

**Knauf Gips' Subsidiary—Knauf Wuhu**

61. Upon information and belief, Defendant, Knauf Wuhu, is an international corporation organized under the laws of China doing business in the State of Florida with its principal place of business located at No. 2 Gang Wan Road, RC-241009, Wuhu Anhui, China.

62. Defendant Knauf Wuhu manufactured and distributed defective drywall that is in one or more of Plaintiffs' homes.

63. The Court has personal jurisdiction over Defendant Knauf Wuhu pursuant to federal law, Florida's Long-Arm Statute, and due process because:

a. Knauf Wuhu has caused injury to Plaintiffs and Class Members in Florida that arose out of the acts and omissions that occurred outside of the State of Florida during the relevant period of time, namely, the negligent design and manufacturing of an unreasonably dangerous drywall that caused economic damages and potential personal injury damages



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

to Plaintiffs and Class Members as set forth more fully herein in this matter in the State of Florida; and

b. Knauf Wuhu has engaged in substantial and not isolated activity within Miami-Dade County by: 1) having shipped tons of defective drywall into the Port of Miami, located in this District; 2) having the defective drywall reach the ultimate consumer, Plaintiffs and Class Member homeowners who had the defective drywall installed in their homes; and 3) selling and marketing the defective drywall in this District and the State of Florida.

64. Knauf Wuhu improperly manufactured, marketed, and later distributed the subject defective drywall in the United States. Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of its defective drywall in the United States.

**Knauf Gips' Subsidiary—Knauf Dongguan**

65. Upon information and belief, Defendant, Knauf Dongguan, is an international corporation organized under the laws of China doing business in the State of Florida with its principal place of business located at No. 2 Xinsha Development Zone, RC-523147, Guangdong, China.

66. Defendant Knauf Dongguan manufactured and distributed defective drywall that is in one or more of Plaintiffs' homes.

67. The Court has personal jurisdiction over Defendant Knauf Dongguan pursuant to federal law, Florida's Long-Arm Statute, and due process because:

a. Knauf Dongguan has caused injury to Plaintiffs and Class Members in Florida that arose out of the acts and omissions that occurred outside of the State of Florida during the relevant period of time, namely, the negligent design and manufacturing of an unreasonably dangerous drywall that caused economic damages and potential personal



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

injury damages to Plaintiffs and Class Members as set forth more fully herein in this matter in the State of Florida; and

b. Knauf Dongguan has engaged in substantial and not isolated activity within Miami-Dade County by: 1) having shipped tons of defective drywall into the Port of Miami, located in this District; 2) having the defective drywall reach the ultimate consumer, Plaintiffs and Class Member homeowners who had the defective drywall installed in their homes; and 3) selling and marketing the defective drywall in this District and the State of Florida.

68. Knauf Donngguan improperly manufactured, marketed, and later distributed the subject defective drywall in the United States. Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of its defective drywall in the United States.

**Defendant Distributors/Suppliers**

**Defendant Banner Supply**

69. Defendant Banner Supply is a Florida corporation with its principal place of business located in the Southern District of Florida at 7195 N.W. 30th Street, Miami, Miami-Dade County, Florida 33122.

70. Defendant Banner Supply exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall in the state of Florida. Directly or indirectly through agents, affiliates or co-conspirators, Defendant Banner Supply's acts or omissions related to defective Drywall have injured Plaintiffs and Class Members as alleged herein.

**Defendant Rothchilt**

71. Defendant Rothchilt is a foreign corporation doing business in the State of Florida with its principal place of business located at N-510 Chia Hsin Bld., Annex 96 Chung Shan N. Rd. Sec. 2, Taipei, Taiwan R.O.C..



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

72. Defendant Rothchilt exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall in the state of Florida. Directly or indirectly through agents, affiliates or co-conspirators, Defendant Rothchilt's acts or omissions related to defective Drywall have injured Plaintiffs and Class Members as alleged herein.

73. Defendant Rothchilt manufactured and distributed defective drywall that is in one or more of Plaintiffs' homes.

74. The Court has personal jurisdiction over Defendant Rothchilt pursuant to federal law, Florida's Long-Arm Statute, and due process because:

a. Rothchilt has caused injury to Plaintiffs and Class Members in Florida that arose out of the acts and omissions that occurred outside of the State of Florida during the relevant period of time, namely, the negligent design and manufacturing of an unreasonably dangerous drywall that caused economic damages and potential personal injury damages to Plaintiffs and Class Members as set forth more fully herein in this matter in the State of Florida; and

b. Rothchilt has engaged in substantial and not isolated activity within Miami-Dade County by: 1) having shipped tons of defective drywall into the Port of Miami, located in this District; 2) having the defective drywall reach the ultimate consumer, Plaintiffs and Class Member homeowners who had the defective drywall installed in their homes; and 3) selling and marketing the defective drywall in this District and the State of Florida.

75. Rothchilt improperly manufactured, marketed, and later distributed the subject defective drywall in the United States. Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of its defective drywall in the United States.



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

**Developer/Builder Defendants**

**South Kendall Construction**

76. Defendant South Kendall Construction is a Florida corporation with its principal place of business located at 888 Kingsman Road, Homestead, Florida.

77. Defendant South Kendall Construction installed defective drywall in one or more of Plaintiffs' homes located in the State of Florida. Defendant South Kendall Construction's acts or omissions directly or indirectly through its agents, employees, or affiliates, in the installation of defective drywall have injured Plaintiffs and Class Members as alleged herein.

**Taylor Woodrow**

78. Defendant Taylor Woodrow is a Florida corporation with its principal place of business located at 8430 Enterprise Circle, Ste. 100, Bradenton, Florida.

79. Defendant Taylor Woodrow, installed defective drywall in one or more of Plaintiffs' homes located in the State of Florida. Defendant Taylor Woodrow acts or omissions directly or indirectly through its agents, employees, or affiliates, in the installation of defective drywall have injured Plaintiffs and Class Members as alleged herein.

**Tousa**

80. Defendant Tousa is a Florida corporation with its principal place of business located at 4000 Hollywood Boulevard, Ste. 500N, Hollywood, Florida.

81. Upon information and belief, Defendant Tousa, Inc., formerly known as, "Engle Homes," installed defective drywall in one or more of Plaintiffs' homes located in the State of Florida. Defendant Tousa's acts or omissions directly or indirectly through its agents, employees, or affiliates, in the installation of defective drywall have injured Plaintiffs and Class Members as alleged herein.



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

## GENERAL ALLEGATIONS

### A. Drywall Background

82. Drywall is also commonly known as gypsum board, wallboard, plasterboard, rock lath, sheetrock, gyproc, or simply board.

83. A drywall panel is made of a paper liner wrapped around an inner core made primarily from hardened gypsum plaster.

84. Drywall is typically available in 4 ft (1219 mm) wide sheets of various lengths. Newly formed sheets are cut from a belt, the result of a continuous manufacturing process.

85. The most commonly used drywall is one-half-inch thick but can range from one quarter (6.35 mm) to one inch (25.4 mm) thick.

86. The core material of drywall, gypsum, is available in two forms, pure gypsum, which is naturally occurring, and synthetic gypsum, which is manmade.

87. Pure gypsum is a white to transparent mineral, but sometimes impurities color it grey, brown, or pink.

88. Synthetic gypsum is generally manufactured with byproducts of coal-fired powerplants.

89. Coal combustion byproducts ("CCBs" or "CCPs") are the inorganic residues that remain after pulverized coal is burned.

90. The primary CCBs used in drywall are byproducts resulting from a utility's attempts to remove sulfur from flue gases.

91. In order to meet emission standards, many utilities have installed flue-gas-desulfurization (FGD) equipment. Flue gas desulfurization is a chemical process to remove sulfur oxides from the flue gas at coal-burning powerplants.



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

92. Various FGD methods have been developed that chemically combine the sulfur gases released in coal combustion by reacting them with a sorbent, such as limestone or lime.

93. As the flue gas comes in contact with the slurry of calcium salts, sulfur dioxide reacts with the calcium to form hydrous calcium sulfate, otherwise known as gypsum.

**B. How Drywall Is Created**

94. In order to form drywall, gypsum must be "calcined," or partially dehydrated by heating.

95. When gypsum is heated, it loses about three quarters of its water and becomes hemihydrate gypsum which is soft and can be easily ground to a powder called hemihydrate gypsum plaster.

96. The gypsum powder is then mixed with water to form a paste or slurry.

97. While the hemihydrate gypsum plaster is in slurry form, it is poured between two paper layers to make drywall.

98. Drywall is formed by sandwiching a core of wet gypsum between two sheets of heavy paper or fiberglass mats. When the core sets and is dried in a large drying chamber, the "sandwich" becomes rigid and strong enough for use as a building material.

99. The paste or slurry is typically mixed with fiber (usually paper and/or fiberglass), plasticizer, foaming agent, potash as an accelerator, starch or other chelate as a retarder, various additives that increase mildew and fire resistance (fiberglass or vermiculite), and water.

100. Drywall may consist of two other materials with sulfur content: alkyl ethoxy sulfates as foaming agents and lignin or napthalene sulfonates as dispersing agents.

**C. The Defective Drywall Emits Noxious and Corrosive Levels of Sulfur**

101. Upon information and belief, Defendants' drywall contained naturally mined gypsum and synthetic gypsum manufactured from CCBs.



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

102. When gypsum, mined or synthetic, is subjected to certain environmental conditions, the product breaks down into sulfate ions which in turn can be chemically transformed into hydrogen sulfide gas and other sulfide gases.

103. The problem of sulfide emissions from drywall is well-understood in the drywall industry and has been studied for many years.

104. The level of sulfides emitted from drywall may depend, in part, on contamination of the drywall with sulfur materials or the use of contaminated gypsum materials.

105. Sulfide emissions from drywall have been a particular problem in landfills and, as such, many landfills refuse to accept drywall or place strict limitations on the amounts and on the ways in which drywall can be disposed. An independent consulting firm, hired by a Miami-based builder, has concluded there is little doubt that the drywall manufactured by Defendants is the cause of the corrosion in many residents' homes.

106. One of the managing principles of the independent testing firm stated that: "We have definitely identified that a combination of sulfide gases are the cause of the corrosion of the coils. The substances we've found are well known to cause that kind of corrosion."

107. The firm's December 2008 results found three sulfide gases: carbon disulfide, carbonyl sulfide and dimethyl sulfide.

108. Hydrogen sulfide was found in previous testing that the company conducted on the Defendants' drywall: "Our previous studied indicate, however, that carbon disulfide, carbonyl sulfide, and hydrogen sulfide are gases that can be associated with emissions from Chinese drywall."

109. According to a Knauf statement, the company "is doing its own investigation, and believes the problem drywall came from a specific [gypsum] mine, which also supplied other



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

manufacturers." According to Knauf, the company stopped using the questionable mine in 2006.

110. According to published reports, however, some independent environmental testing firms and building experts have said the source of the drywall problem is waste materials from the scrubbers of coal-fired power plants used to make the drywall in China.

111. Knauf's 2009 statement also noted: "Until last year in Florida, no complaint had been raised and no product had been rejected because of odor or impacts to copper in the nine years of [Knauf Tianjin's] operation." (Emphasis added).

112. Knauf received complaints from builders and contractors about "rotten egg" smells coming from its Chinese-manufactured drywall as far back as 2006.

113. In November 2006, in response to reports of odors associated with its drywall, the company hired the Center for Toxicology and Environmental Health, L.L.C. (CTEH) to conduct an air quality investigation in five homes in Florida.

114. Knauf's 2009 statement also declared: "The sulfur compounds detected in testing in homes have been found at no greater levels than air outside homes or in soil, marshes or the ocean."

115. Knauf's 2006 testing revealed, however, that its product released detectable, above-background levels of various sulfur containing compounds. In particular, Knauf's testing revealed the presence of iron disulfide from its Chinese Drywall as the likely source of the sulfur smells. Knauf's testing agency declared: "These data indicate that certain naturally-occurring sulfur-containing *compounds can be emitted from the Knauf Tianjin product at concentrations higher than present in background air*." (emphasis added).

116. One importer acknowledged in published reports that the defective Chinese Drywall was "well known in the industry" by 2007.

117. No member of the Class could have discovered the existence of the defect in the Chinese-manufactured drywall until press reports about the defects were released in December 2008.

**D. The Need for Medical Monitoring for the Health Effects of Sulfur Emitting Drywall**

118. Hydrogen sulfide ("H2S"), one of the chemicals found to have been released from drywall, is considered a broad-spectrum poison, meaning that it can poison several different systems in the body, although the nervous system is most affected.

119. The toxicity of H2S is comparable with that of hydrogen cyanide. It forms a complex bond with iron in the mitochondrial cytochrome enzymes, thereby blocking oxygen from binding and stopping cellular respiration.

120. Exposure to lower concentrations of sulfides can result in eye irritation, a sore throat and cough, nausea, shortness of breath, and fluid in the lungs.

121. Long-term, low-level exposure to sulfides has been associated with fatigue, loss of appetite, headaches, irritability, poor memory, and dizziness. Chronic exposures to low levels of sulfides has also been implicated in increased miscarriage and reproductive health issues.

122. Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold defective drywall, which was unreasonably dangerous in its normal use in that the drywall caused corrosion and damage to Other Property in Plaintiffs and Class Members' homes and caused allergic reactions, coughing, sinus and throat infection, eye irritation, breathing hazards, other health concerns, and/or significantly increased the risk of contracting a serious latent disease.



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

123. As a direct and proximate result of Defendants' actions and omissions, Plaintiffs and the Plaintiff Class Members' homes and bodies have been exposed to Defendants' drywall and the corrosive and harmful effects of the sulfide gases and other chemicals being released from these proven hazardous substances.

124. As a direct and proximate result of Defendants' defective drywall and the corrosive effects of the sulfide gases and other chemicals being released from these products, the Plaintiffs and the Class Members have suffered, and continue to suffer damages. These damages include, but are not limited to, costs of inspection as well as the costs and expenses necessary to remedy, replace and remove the defective drywall and Other Property that has been affected.

125. As a direct and proximate result of Defendants' defective drywall and the corrosive effects of the sulfide gases and other chemicals being released from these products, Plaintiffs and Class Members have been exposed to above-background levels of sulfides and other harmful chemicals, have been placed at an increased risk of disease, and have need for injunctive relief in the form of emergency notice, environmental testing and monitoring, and medical monitoring.

**Conditions Precedent**

126. All notice required by Chapter 558, Florida Statutes, and conditions precedent to bringing this action have been met or will have been met or were waived by Defendants.

## CLASS ACTION ALLEGATIONS

127. Plaintiffs bring this suit as a class action pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and the following Class and Subclasses (collectively referred to herein as "the Class") comprised of:



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

**Class Definition**

> All owners and residents of residential homes in the State of Florida containing drywall manufactured, sold, distributed, or supplied by Defendants that emits excessive levels of sulfur. All members of the class are seeking compensatory damages, injunctive and/or equitable relief for environmental and medical monitoring. Defendant, its officers, directors, subsidiaries, or any person or other entity related to, affiliated with or employed by Defendant are excluded from the class definition.
>
> **Subclass "A"**
> **Developer/Builder South Kendall Construction Subclass:**
> Subclass representative plaintiffs, Karin Vickers, Felix and Jenny Martinez and Jason Santiago on behalf of all owners and residents of residential homes in the State of Florida made by the developer containing defective drywall that emits excessive levels of sulfur.
>
> **Subclass "B"**
> **Developer/Builder Tousa Subclass:**
> Subclass representative plaintiff, George Raphael on behalf of all owners and residents of residential homes in the State of Florida made by the developer containing defective drywall that emits excessive levels of sulfur.
>
> **Subclass "C"**
> **Developer/Builder Taylor Woodrow Subclass:**
> Subclass representative plaintiffs, Walter Niemczura, Taylor Woodrow and Jim Tarzy on behalf of all owners and residents of residential homes in the State of Florida made by the developer containing defective drywall that emits excessive levels of sulfur.

128. It is further averred upon information and belief that heretofore named and unnamed distributors were responsible for distributing the drywall to the named Plaintiffs and Class members' homes. However, this information is in the control and possession of the builder and manufacturing Defendants. Following discovery, Plaintiffs contemplate that this information will be made available and the responsible distributors will either be specifically designated and/or joined in this action as Defendants.



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

## NUMEROSITY

129. Upon information and belief, the Defendants' defective drywall was installed in thousands of homes in the State of Florida; therefore, the Class is sufficiently numerous so that the joinder of all members of the Class in a single action is impracticable.

130. Upon information and belief, there are thousands of putative Class members involved in this case.

## COMMONALITY

131. There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class. Among these common questions of law and fact are the following:

a. whether Defendants manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall products;

b. whether Defendants' drywall contains latent and/or manifest defects in the form of emitting sulfides and other chemicals;

c. whether Plaintiffs and Class Members are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful and tortious conduct;

d. whether Plaintiffs and Class Members are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct;

e. whether Defendants' conduct in manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

their drywall breached the duty of care owed by Defendants to Plaintiffs and Class Members;

f. whether Defendants are strictly liable for selling a defective product;

g. whether Defendants failed to warn Plaintiffs of the dangers and hazards related to the defective drywall;

h. whether Builder/Developer Defendants conduct constitutes negligence;

i. whether Builder/Developer Defendants breached warranties;

j. whether Builder/Developers Defendants breached implied warranties of merchantability;

k. whether Defendants breached implied warranties of fitness for a particular purpose;

l. whether Defendants violated the Florida Deceptive Trade Practices Act;

m. whether Defendants created a private nuisance;

n. whether Defendants should create and fund an emergency notice program, environmental monitoring, and/or a medical monitoring program;

o. whether Defendants should give notice to Plaintiffs and Class Members under Fed. R. Civ. P. 23(b) 2 or (d) of the defects in drywall, of the need for necessary home inspection, and of the potential health risks associated with the drywall's defects; and

p. whether Plaintiffs and Class members are entitled to attorney's fees, and if so, in what amount.

**TYPICALITY**



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

132. The legal claims of Plaintiffs are typical of the legal claims of other members of the Class. Plaintiffs have the same legal interests as other members of the Class.

133. The Plaintiffs and each member of the Class have defective drywall in their homes. Due to the drywall in Plaintiffs and Class Members' homes, Plaintiffs and Class Members suffered damages in the form of economic damages, and the need for injunctive and equitable relief, as set forth herein.

134. Plaintiffs and Class Members' homes and personal property have sustained the same type of economic damage and potential physical harm due to the defective drywall. Thus, the legal remedies available to Plaintiffs and the Class Members are the same due to the wrongful conduct of Defendants. The Plaintiffs' claims satisfy the typicality requirement.

**ADEQUACY OF REPRESENTATION**

135. Plaintiffs are adequate representatives of the Class and together with legal counsel will fairly and adequately protect the interests of the Class. Plaintiffs have no conflicts with the Class and are committed to the vigorous prosecution of this action and have retained competent counsel experienced in litigation of this nature to represent them. Plaintiffs anticipate no difficulty in the management of this litigation as a class action. Moreover, the class representative's interests are aligned with the Class Members and it is unlikely there will be a divergence of viewpoint.

136. The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and litigation involving defective and harmful products. Counsel will fairly and adequately protect the interests of the class.



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

**RULE 23(b)(1) REQUIREMENTS**

137. The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

**RULE 23(b)(2) REQUIREMENTS**

138. The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2). Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

**RULE 23(b)(3) REQUIREMENTS**

139. The common questions set forth above predominate over Class Members' individual issues.

140: A class action is superior to other methods of dispute resolution in this case. The Class members have an interest in class adjudication rather than individual adjudication because of the overlapping rights. It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class members would protect their rights on their own without this class action case. Management of the class will be efficient and far superior to the management of individual lawsuits.



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

**COUNT I**
**NEGLIGENCE**
**(Against All Manufacturer Defendants Knauf Gips, Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan)**

141. Plaintiffs adopt and restate paragraphs 1-68 and 82-140 as if fully set forth herein.

142. Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in the a) design, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling drywall, including a duty to adequately warn of its failure to do the same. Defendants' duty includes, but was not limited to the following:

a. using reasonable care in the design of the drywall to prevent it from containing Defects as set forth herein;

b. using reasonable care in the manufacturing of the drywall to prevent it from containing Defects as set forth herein;

c. using reasonable care in the exporting of the drywall to prevent it from containing Defects as set forth herein;

d. using reasonable care in the importing of the drywall to prevent it from containing Defects as set forth herein;

e. using reasonable care in the distributing of the drywall to prevent it from containing Defects as set forth herein;

f. using reasonable care in the delivering of the drywall to prevent it from containing Defects as set forth herein;

g. using reasonable care in the supplying of the drywall to prevent it from containing Defects as set forth herein;



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

h. using reasonable care in the inspecting of the drywall to prevent it from containing Defects as set forth herein;

i. using reasonable care in the marketing of the drywall to prevent it from containing Defects as set forth herein;

j. using reasonable care in the selling of the drywall to prevent it from containing Defects as set forth herein;

k. adequately warning and instructing the Plaintiffs and Class Members of the Defects associated with drywall;

l. properly manufacturing the drywall to prevent it from containing the Defects as set forth herein;

m. properly selecting the gypsum that did not contain excessive levels of sulfur;

n. recalling or otherwise notifying users at the earliest date that it became known that the drywall was dangerous and Defective;

o. advertising and recommending the use of drywall with sufficient knowledge as to its manufacturing defect and dangerous propensities;

p. not misrepresenting that the drywall was safe for its intended purpose when, in fact, it was not;

q. not manufacturing drywall in a manner which was dangerous to its intended and foreseeable users;

r. not exporting and/or importing drywall in a manner which was dangerous to its intended and foreseeable users;

s. not distributing, delivering, and/or supplying drywall in a manner which was dangerous to its intended and foreseeable users;



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

t. not concealing information from Plaintiffs and Class Members regarding reports of adverse effects associated with drywall;

u. not improperly concealing and/or misrepresenting information from the Plaintiffs and Plaintiff Class Members and/or the public, concerning the severity of risks and dangers of Defendants' drywall and/or the manufacturing Defect; and

v. otherwise exercising reasonable care in the design, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling drywall to prevent it from containing Defects as set forth herein.

143. Defendants were negligent and breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling drywall, including a duty to adequately warn of its failure to do the same. Defendants' negligence included, but was not limited to the following:

a. failing to use reasonable care in the design of the drywall to prevent it from containing Defects as set forth herein;

b. failing to use reasonable care in the manufacturing of the drywall to prevent it from containing Defects as set forth herein:

c. failing to use reasonable care in the exporting of the drywall to prevent it from containing Defects as set forth herein;

d. failing to use reasonable care in the importing of the drywall to prevent it from containing Defects as set forth herein;



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

e. failing to use reasonable care in the distributing of the drywall to prevent it from containing Defects as set forth herein;

f. failing to use reasonable care in the delivering of the drywall to prevent it from containing Defects as set forth herein;

g. failing to use reasonable care in the supplying of the drywall to prevent it from containing Defects as set forth herein;

h. failing to use reasonable care in the inspecting of the drywall to prevent it from containing Defects as set forth herein;

i. failing to use reasonable care in the marketing of the drywall to prevent it from containing Defects as set forth herein;

j. failing to use reasonable care in the selling of the drywall to prevent it from containing Defects as set forth herein;

k. failing to adequately warn and instruct the Plaintiffs and Class Members of the Defects associated with drywall;

l. failing to properly manufacture the drywall to prevent it from containing the Defects as set forth herein;

m. failing to properly select the gypsum that did not contain excessive levels of sulfur;

n. failing to recall or otherwise notify users at the earliest date that it became known that drywall was dangerous and Defective;

o. advertising and recommending the use of drywall without sufficient knowledge as to its manufacturing Defect and dangerous propensities;



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

p. misrepresenting that drywall was safe for its intended purpose when, in fact, it was not;

q. manufacturing drywall in a manner which was dangerous to its intended and foreseeable users;

r. exporting and/or importing drywall in a manner which was dangerous to its intended and foreseeable users;

s. distributing, delivering, and/or supplying drywall in a manner which was dangerous to its intended and foreseeable users;

t. concealing information from Plaintiffs and Class Members regarding reports of adverse effects associated with drywall;

u. improperly concealing and/or misrepresenting information from the Plaintiffs and Plaintiff Class Members and/or the public, concerning the severity of risks and dangers of Defendants' drywall and/or the manufacturing Defect; and

v. failing to otherwise exercising reasonable care in the design, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling drywall to prevent it from containing Defects as set forth herein.

144. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

145. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the homes; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

146. Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

a. an order certifying the case as a class action;

b. an order appointing Plaintiffs as the Class Representatives of the Class;

c. an order appointing undersigned counsel and their firms as counsel for the Class;

d. compensatory damages;

e. post-judgment interest;

f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;

g. an award of taxable costs; and,

h. any and all such further relief as this Court deems just and proper.



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

**COUNT II**
**STRICT LIABILITY**
**(Against All Manufacturer Defendants Knauf Gips, Knauf Tianjin, Knauf Wuhu, Knauf Dongguan)**

147. Plaintiffs adopt and restate paragraphs 1-68 and 82-140 as if fully set forth herein.

148. At all times relevant hereto, Defendants were in the business of designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

149. The drywall, including that installed in the homes of Plaintiffs and Class Members were placed by Defendants in the stream of commerce.

150. Defendants knew that the subject drywall would be used without inspection for defects by consumers.

151. Defendants intended that the drywall reach the ultimate consumer, such as Plaintiffs and Class Members, and it indeed reached Plaintiffs and Class Members when it was installed in their homes.

152. When installed in the Plaintiffs and Class Members' homes, the drywall was in substantially the same condition it was when Defendants manufactured, sold, and/or delivered it.

153. At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

154. The subject drywall was not misused or altered by any third parties, Plaintiffs or Class Members.

155. The drywall was defectively manufactured, designed, inspected, tested, marketed, distributed, and sold.



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

156. The design defect was in designing drywall that allowed high levels of sulfur and/or other chemicals to emit through off-gassing and damage Plaintiffs' property that caused corrosion of air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property") and potential health hazards.

157. The manufacturing defect was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur that were too high and emitted various sulfide gases and/or other chemicals through "off-gassing" that creates noxious, "rotten egg-like" odors for drywall that caused corrosion of air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property").

158. The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a defective condition, as described above.

159. The defective manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to the Plaintiffs and Class Members.

160. The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct the Plaintiffs and Class Members of the defective design, inspection, testing, manufacturing, marketing, and selling of the drywall.

161. Plaintiffs and Class Members were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Plaintiffs and Class Members, acting as a



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

reasonably prudent people discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.

162. Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Plaintiffs and Class Members.

163. Defendants' defective drywall benefit to Plaintiffs and Class Members, if any, was greatly outweighed by the risk of harm and danger to them.

164. The defects in the drywall, as well as Defendants' failure to adequately warn the Plaintiffs and Class Members of the defects rendered the drywall unreasonably dangerous and was the direct and proximate cause of damages to Plaintiffs and Class Members.

165. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

166. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the homes; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.



**Colson Hicks Eidson**

**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

a. an order certifying the case as a class action;

b. an order appointing Plaintiffs as the Class Representatives of the Class;

c. an order appointing undersigned counsel and their firms as counsel for the Class;

d. compensatory damages;

e. post-judgment interest;

f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;

g. an award of taxable costs; and,

h. any and all such further relief as this Court deems just and proper.

**<u>COUNT III</u>**
**VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(Against All Manufacturer Defendants Knauf Gips, Knauf Tianjin, Knauf Wuhu, Knauf Dongguan)**

167. Plaintiffs adopt and restate paragraphs 1-68 and 82-140 as if fully set forth herein.

168. This is an action for relief under section 501.201, *et.seq.*, Florida Statutes (The Florida Deceptive and Unfair Trade Practices Act).

169. Section 501.203(7), Florida Statutes defines "Consumer" as "an individual; child, by and through its parent or legal guardian; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; or any other group or combination." Plaintiffs and Class Members are "Consumers" within the meaning of §501.203(7), Florida Statutes.

170. Section 501.203(8), Florida Statutes defines "Trade or Commerce" as:



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

> [T]he advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or Commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

The advertising, soliciting, providing, offering, or distributing of drywall by Defendants to Plaintiffs and Class Members is "Trade or Commerce" within the meaning of section 501.203(8), Florida Statutes.

171. Section 501.204(1) provides that: "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The Defendants acts and omissions as well as their failure to use reasonable care in this matter as alleged in this Complaint equals unconscionable acts or practices, as well as deceptive and unfair acts or practices in the conduct of Defendants' trade or commerce pursuant to section 501.204, Florida Statutes.

172. The unconscionable, illegal, unfair and deceptive acts and practices of Defendants violate the provisions of Florida's Deceptive and Unfair Trade Practices Act. Plaintiffs and Class Members have suffered actual damage for which they are entitled to relief pursuant to section 501.211(2), Florida Statutes.

173. Plaintiffs and Class Members are entitled to recover their reasonable attorneys' fees pursuant to section 501.2105, Florida Statutes upon prevailing in this matter.

174. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

175. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

a. an order certifying the case as a class action;
b. an order appointing Plaintiffs as the Class Representatives of the Class;
c. an order appointing undersigned counsel and their firms as counsel for the Class;
d. compensatory damages;
e. post-judgment interest;
f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;
g. an award of taxable costs; and,
h. any and all such further relief as this Court deems just and proper.

## COUNT IV
## STRICT LIABILITY
## (Against All Distributor Defendants Rothchilt and Banner Supply)

176. Plaintiffs adopt and restate paragraphs 1-25, 69-75, and 82-140 as if fully set forth herein.



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

177. At all times relevant hereto, Defendants were in the business of exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

178. The drywall, including that installed in the homes of Plaintiffs and Class Members were placed by Defendants in the stream of commerce.

179. Defendants knew that the subject drywall would be used without inspection for defects by consumers.

180. Defendants intended that the drywall reach the ultimate consumer, such as Plaintiffs and Class Members, and it indeed reached Plaintiffs and Class Members when it was installed in their homes.

181. When installed in the Plaintiffs and Class Members' homes, the drywall was in substantially the same condition it was when Defendants distributed, supplied, sold, and/or delivered it.

182. At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

183. The subject drywall was not misused or altered by any third parties, Plaintiffs or Class Members.

184. The drywall was defectively manufactured, designed, inspected, tested, marketed, distributed, delivered, and/or sold.

185. The design defect was in designing drywall that allowed high levels of sulfur and/or other chemicals to emit through off-gassing and damage Plaintiffs' property that caused corrosion of air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing,



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property") and potential health hazards.

186. The manufacturing defect was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur that were too high and emitted various sulfide gases and/or other chemicals through "off-gassing" that creates noxious, "rotten egg-like" odors for drywall that caused corrosion of air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property").

187. The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a defective condition, as described above.

188. The defective manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to the Plaintiffs and Class Members.

189. The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct the Plaintiffs and Class Members of the defective design, inspection, testing, manufacturing, marketing, and selling of the drywall.

190. Plaintiffs and Class Members were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Plaintiffs and Class Members, acting as a reasonably prudent people discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

191. Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Plaintiffs and Class Members.

192. Defendants' defective drywall benefit to Plaintiffs and Class Members, if any, was greatly outweighed by the risk of harm and danger to them.

193. The defects in the drywall, as well as Defendants' failure to adequately warn the Plaintiffs and Class Members of the defects rendered the drywall unreasonably dangerous and was the direct and proximate cause of damages to Plaintiffs and Class Members.

194. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

195. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the homes; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

a. an order certifying the case as a class action;



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

b. an order appointing Plaintiffs as the Class Representatives of the Class;

c. an order appointing undersigned counsel and their firms as counsel for the Class;

d. compensatory damages;

e. post-judgment interest;

f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;

g. an award of taxable costs; and,

h. any and all such further relief as this Court deems just and proper.

**COUNT V**
**VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(Against All Distributor Defendants Rothchilt and Banner Supply)**

196. Plaintiffs adopt and restate paragraphs 1-25, 69-75, and 82-140 as if fully set forth herein.

197. This is an action for relief under section 501.201, *et.seq.,* Florida Statutes (The Florida Deceptive and Unfair Trade Practices Act).

198. Section 501.203(7), Florida Statutes defines "Consumer" as "an individual; child, by and through its parent or legal guardian; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; or any other group or combination." Plaintiffs and Class Members are "Consumers" within the meaning of §501.203(7), Florida Statutes.

199. Section 501.203(8), Florida Statutes defines "Trade or Commerce" as:

> [T]he advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or Commerce" shall include the conduct of any trade or commerce,


**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

> however denominated, including any nonprofit or not-for-profit person or activity.

The advertising, soliciting, providing, offering, or distributing of drywall by Defendants to Plaintiffs and Class Members is "Trade or Commerce" within the meaning of section 501.203(8), Florida Statutes.

200. Section 501.204(1) provides that: "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The Defendants'acts and omissions as well as their failure to use reasonable care in this matter as alleged in this Complaint equals unconscionable acts or practices, as well as deceptive and unfair acts or practices in the conduct of Defendants' trade or commerce pursuant to section 501.204, Florida Statutes.

201. The unconscionable, illegal, unfair and deceptive acts and practices of Defendants violate the provisions of Florida's Deceptive and Unfair Trade Practices Act. Plaintiffs and Class Members have suffered actual damage for which they are entitled to relief pursuant to section 501.211(2), Florida Statutes.

202. Plaintiffs and Class Members are entitled to recover their reasonable attorneys' fees pursuant to section 501.2105, Florida Statutes upon prevailing in this matter.

203. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.



**Colson Hicks Eidson**
**255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

204. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

a. an order certifying the case as a class action;

b. an order appointing Plaintiffs as the Class Representatives of the Class;

c. an order appointing undersigned counsel and their firms as counsel for the Class;

d. compensatory damages;

e. post-judgment interest;

f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;

g. an award of taxable costs; and,

h. any and all such further relief as this Court deems just and proper.

**<u>COUNT VI</u>**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(All Defendant Builder/Developer Defendants Taylor Woodrow, Tousa, South Kendall Construction)**

205. Plaintiffs adopt and restate paragraphs 1-25 and 76-140 as if fully set forth herein.

206. Defendants were in privity with Plaintiffs and Class Members.



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

207. At the times Defendants installed, utilized, supplied, inspected, and/or sold drywall for use in the Plaintiffs and Class Members' homes. Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in the Plaintiffs and Class Members' homes for use as a building material, and impliedly warranted the product to be fit for that use.

208. Defendants' drywall product was placed into the stream of commerce by Defendants in a defective condition and were expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which they were sold.

209. The drywall was defective because it was not fit for the uses intended or reasonably foreseeable by Defendants; to wit, the installation of the drywall in Plaintiffs and Class Members' homes for use as a building material, because it contained defects as set forth herein.

210. The Defendants breached the implied warranty of merchantability because the drywall was not fit to be installed in Plaintiffs and Class Members' homes as a building material due to the defects set forth herein.

211. Defendants had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of implied warranty of merchantability and failed to cure.

212. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring,



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

personal property, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

213. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

214. Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

a. an order certifying the case as a class action;

b. an order appointing Plaintiffs as the Class Representatives of the Class;

c. an order appointing undersigned counsel and their firms as counsel for the Class;

d. compensatory damages;

e. post-judgment interest;

f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;

g. an award of taxable costs; and,

h. any and all such further relief as this Court deems just and proper.



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

**COUNT VII**
**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**
**(All Defendant Builder/Developer Defendants Taylor Woodrow, Tousa, South Kendall Construction)**

215. Plaintiffs adopt and restate paragraphs 1-25 and 76-140 as if fully set forth herein.

216. Defendants were in privity with Plaintiffs and Class Members.

217. Defendants' drywall product was placed into the stream of commerce by Defendants in a defective condition and was expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which it were sold.

218. The drywall was defective because it was not fit for the specific purpose of installing in the Plaintiffs and Class Members' homes as a building material, for which Plaintiffs and Class Members bought the product in reliance on the judgment of Defendants.

219. The Defendants breached the implied warranty of fitness for a particular purpose because the drywall was not fit to be installed in Plaintiffs and Class Members homes as a building material due to the defects set forth herein.

220. Defendants had reasonable and adequate notice of the Plaintiffs and the Class Members' claims for breach of implied warranty of merchantability and failed to cure.

221. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

222. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

223. Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

a. an order certifying the case as a class action;
b. an order appointing Plaintiffs as the Class Representatives of the Class;
c. an order appointing undersigned counsel and their firms as counsel for the Class;
d. compensatory damages;
e. post-judgment interest;
f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;
g. an award of taxable costs; and,
h. any and all such further relief as this Court deems just and proper.

## COUNT VIII
## VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
## (All Defendant Builder/Developer Defendants Taylor Woodrow, Tousa, and South Kendall Construction)

224. Plaintiffs adopt and restate paragraphs1-25 and 76-140 as if fully set forth herein.

225. This is an action for relief under section 501.201, *et.seq.,* Florida Statutes (The Florida Deceptive and Unfair Trade Practices Act).

226. Section 501.203(7), Florida Statutes defines "Consumer" as "an individual; child, by and through its parent or legal guardian; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; or any other group or combination." Plaintiffs and Class Members are "Consumers" within the meaning of §501.203(7), Florida Statutes.

227. Section 501.203(8), Florida Statutes defines "Trade or Commerce" as:

> [T]he advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or Commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

The advertising, soliciting, providing, offering, or distributing of drywall by Defendants to Plaintiffs and Class Members is "Trade or Commerce" within the meaning of section 501.203(8), Florida Statutes.

228. Section 501.204(1) provides that: "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this Complaint equals unconscionable acts or practices, as well as deceptive and unfair acts or practices in the conduct of Defendants' trade or commerce pursuant to section 501.204, Florida Statutes.

229. The unconscionable, illegal, unfair and deceptive acts and practices of Defendants violate the provisions of Florida's Deceptive and Unfair Trade Practices Act. Plaintiffs and Class



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

Members have suffered actual damage for which they are entitled to relief pursuant to section 501.211(2), Florida Statutes.

230. Plaintiffs and Class Members are entitled to recover their reasonable attorneys' fees pursuant to section 501.2105, Florida Statutes upon prevailing in this matter.

231. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

232. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

a. an order certifying the case as a class action;

b. an order appointing Plaintiffs as the Class Representatives of the Class;

c. an order appointing undersigned counsel and their firms as counsel for the Class;

d. compensatory damages;

e. post-judgment interest;



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;

g. an award of taxable costs; and,

h. any and all such further relief as this Court deems just and proper.

**COUNT IX**
**NEGLIGENCE**
**(All Defendant Builder/Developer Defendants Taylor Woodrow, Tousa, and South Kendall Construction)**

233. Plaintiffs adopt and restate paragraphs 1-25 and 76-140 as if fully set forth herein.

234. Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in the a) inspecting, b) testing, the drywall they were installing in Plaintiffs' homes, including a duty to adequately warn of its failure to do the same. Defendants' duty includes, but was not limited to the following:

a. using reasonable care in the inspecting of the drywall they installed in Plaintiffs' homes to discover that it contained Defects as set forth herein and not to install the defective drywall in Plaintiffs' homes;

b. using reasonable care in the testing of the drywall they installed in Plaintiffs' homes to discover that it contained Defects as set forth herein and not to install the defective drywall in Plaintiffs' homes;

c. adequately warning and instructing the Plaintiffs and Class Members of the Defects associated with drywall; and

d. otherwise exercising reasonable care in the inspecting and testing of the drywall they installed in Plaintiffs' homes to discover that it contained



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

Defects as set forth herein and not to install the defective drywall in Plaintiffs' homes.

235. Defendants were negligent and breached their duty to exercise reasonable care in he a) inspecting, b) testing, the drywall they were installing in Plaintiffs' homes, including a duty to adequately warn of its failure to do the same. Defendants' negligence included, but was not limited to the following:

a. failing to use reasonable care in the inspecting of the drywall they installed in Plaintiffs' homes to discover that it contained Defects as set forth herein and not to install the defective drywall in Plaintiffs' homes;

b. failing to use reasonable care in the testing of the drywall they installed in Plaintiffs' homes to discover that it contained Defects as set forth herein and not to install the defective drywall in Plaintiffs' homes;

c. failing to adequately warn and instructing the Plaintiffs and Class Members of the Defects associated with drywall; and

d. failing to otherwise exercising reasonable care in the inspecting and testing of the drywall they installed in Plaintiffs' homes to discover that it contained Defects as set forth herein and not to install the defective drywall in Plaintiffs' homes.

236. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring,



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

personal property, furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

237. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the homes; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

238. Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

a. an order certifying the case as a class action;

b. an order appointing Plaintiffs as the Class Representatives of the Class;

c. an order appointing undersigned counsel and their firms as counsel for the Class;

d. compensatory damages;

e. post-judgment interest;

f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;

g. an award of taxable costs; and,

h. any and all such further relief as this Court deems just and proper.



**Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane**
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

**COUNT X**
**BREACH OF CONTRACT AGAINST DEFENDANT TAYLOR WOODROW ON BEHALF OF TAYLOR WOODROW PLAINTIFFS**

239. Plaintiffs adopt and restate paragraphs 1-9, 20-25, 78-79 and 82-140 as if fully set forth herein.

240. Taylor Woodrow made an offer to build homes for Plaintiffs Walter Niemczura, Jim Tarzy, and the Taylor Woodrow Subclass.

241. Plaintiffs Walter Niemczura, Jim Tarzy, and the Taylor Woodrow Sublcass accepted Taylor Woodrow's offer to build a homes for them.

242. As consideration, Plaintiffs Walter Niemczura, Jim Tarzy, and the Taylor Woodrow Sublcass agreed to compensate Taylor Woodrow for building their homes.

243. As part of the agreement to purchase the home, Taylor Woodrow promised Plaintiffs Walter Niemczura, Jim Tarzy, and the Taylor Woodrow Subclass that their homes would be free of defects, such as drywall that is inherently defective because it emits various sulfide gases and/or other chemicals through "off-gassing" that causes property damage and potential health hazards.

244. Taylor Woodrow breached the contract by providing Walter Niemczura, Jim Tarzy, and the Taylor Woodrow Subclass homes that were not free of defects, to wit, the homes contained drywall that is inherently defective because it emits various sulfide gases and/or other chemicals through "off-gassing" that causes property damage and potential health hazards.

245. As a direct and proximate cause of Taylor Woodrow's breach of contract, Walter Niemczura, Jim Tarzy, and the Taylor Woodrow Subclass have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of their homes; the



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

246. As a direct and proximate cause of Taylor Woodrow's breach of contract, Walter Niemczura, Jim Tarzy, and the Taylor Woodrow Subclass have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

a. an order certifying the case as a class action;

b. an order appointing Plaintiffs as the Class Representatives of the Class;

c. an order appointing undersigned counsel and their firms as counsel for the Class;

d. compensatory damages;

e. post-judgment interest;

f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;

g. an award of taxable costs; and,

h. any and all such further relief as this Court deems just and proper.



**Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane**
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

## COUNT XI
## BREACH OF CONTRACT AGAINST DEFENDANT SOUTH KENDALL CONSTRUCTION ON BEHALF OF THE SOUTH KENDALL CONSTRUCTION PLAINTIFFS

247. Plaintiffs adopt and restate paragraphs 1-9, 20-25, 76-77, and 82-140 as if fully set forth herein.

248. South Kendall Construction made an offer to build homes for Plaintiffs Karin Vickers, Felix Martinez, Jenny Martinez, Jason Santiago, and the South Kendall Construction Subclass.

249. Plaintiffs Karin Vickers, Felix Martinez, Jenny Martinez, Jason Santiago, and the South Kendall Construction Subclass accepted South Kendall Construction's offer to build a home for them.

250. As consideration, Plaintiffs Karin Vickers, Felix Martinez, Jenny Martinez, Jason Santiago, and the South Kendall Construction Subclass agreed to compensate South Kendall Construction for building their homes.

251. As part of the agreement to purchase the homes, South Kendall Construction promised Plaintiffs Karin Vickers, Felix Martinez, Jenny Martinez, Jason Santiago and the South Kendall Construction Subclass that their homes would be free of defects, such as drywall that is inherently defective because it emits various sulfide gases and/or other chemicals through "off-gassing" that causes property damage and potential health hazards.

252. South Kendall Construction breached the contract by providing Plaintiffs Karin Vickers, Felix Martinez, Jenny Martinez, Jason Santiago and the South Kendall Construction Subclass homes that were not free of defects, to wit, the homes contained drywall that is inherently



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

defective because it emits various sulfide gases and/or other chemicals through "off-gassing" that causes property damage and potential health hazards.

253. As a direct and proximate cause of South Kendall Construction's breach of contract, Plaintiffs Karin Vickers, Felix Martinez, Jenny Martinez, Jason Santiago and the South Kendall Construction Subclass have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

254. As a direct and proximate cause of South Kendall Construction's breach of contract, Plaintiffs Karin Vickers, Felix Martinez, Jenny Martinez, Jason Santiago and the South Kendall Construction Subclass have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

a. an order certifying the case as a class action;
b. an order appointing Plaintiffs as the Class Representatives of the Class;
c. an order appointing undersigned counsel and their firms as counsel for the Class;
d. compensatory damages;

e. post-judgment interest;

f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;

g. an award of taxable costs; and,

h. any and all such further relief as this Court deems just and proper.

**COUNT XII**
**PRIVATE NUISANCE**
**(Against All Defendants)**

255. Plaintiffs adopt and restate paragraphs 1-140 as if fully set forth herein.

256. The Defendants' tortious or wrongful acts or omissions have caused sulfide gas and/or other chemical leaching into Plaintiffs and Class Members' homes which has unreasonably interfered, and continues to interfere, with the Plaintiffs and Class Members' use and enjoyment of their properties and caused them potential health problems.

257. Defendants' interference has impaired the rights of Plaintiffs and Class Members health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

258. Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

259. The interference with Plaintiffs and Class Members' use of their property caused by Defendants is substantial and is ongoing.

260. Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs and Plaintiff Class Members' damages, injuries, harm, economic loss, and increased risk of harm, which they suffered and will continue to suffer.



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

261. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

262. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

263. Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

a. an order certifying the case as a class action;

b. an order appointing Plaintiffs as the Class Representatives of the Class;

c. an order appointing undersigned counsel and their firms as counsel for the Class;

d. compensatory damages;

e. post-judgment interest;



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;

g. an award of taxable costs; and,

h. any and all such further relief as this Court deems just and proper.

**COUNT XIII**
**UNJUST ENRICHMENT**
**(All Defendants)**

264. Plaintiffs adopt and restate paragraphs 1-140 as if fully set forth herein.

265. Defendants received monies as a result of Plaintiffs and Class Members' purchases of Defendants' defective drywall, or purchase of homes containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

266. Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class.

267. Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

268. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred economic damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring,



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

personal property, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

269. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; and the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

270. Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, and consequential damages in the manner set forth herein.

WHEREFORE Plaintiffs, on behalf of all others similarly situated and the Class, demand:

a. an order certifying the case as a class action;

b. an order appointing Plaintiffs as the Class Representatives of the Class;

c. an order appointing undersigned counsel and their firms as counsel for the Class;

d. compensatory damages;

e. post-judgment interest;

f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;

g. an award of taxable costs; and,

h. any and all such further relief as this Court deems just and proper.

**<u>COUNT XIV</u>**
**EQUITABLE AND INJUNCTIVE RELIEF AND MEDICAL MONITORING**
**(All Defendants)**



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

271. Plaintiffs adopt and restate paragraphs 1-140 as if fully set forth herein.

272. Plaintiffs and the Class are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

273. Plaintiffs and the Class will suffer irreparable harm if the Court does not render the injunctive relief and medical monitoring relief set forth herein, and if defendants are not ordered to recall, buy back, and/or repair the plaintiffs and members of the class' homes.

274. Plaintiffs on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that defendants be ordered to: (1) remedy, repair and/or replace the drywall in the homes, (2) cease and desist from misrepresenting to the Class and the general public that there is no defect in, or danger associated with, the drywall, and (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the defect, dangers associated with the drywall (4) create, fund, and support a medical monitoring program consistent with the requirements of Florida law.

275. Until Defendants' defective drywall has been removed, Defendants should provide continued environmental and air monitoring in Plaintiffs and Class Members' homes.

276. Plaintiffs and Class Members have been exposed to greater than normal background levels of sulfides and other hazardous chemicals as a result of exposures to Defendants' defective drywall.

277. The sulfides gases and the other chemicals which have been released from Defendants drywall and to which Plaintiffs and Class Members have been exposed are proven hazardous, dangerous, or toxic substances.

278. Plaintiffs' and Class Members' exposures were caused by the Defendant's negligence or otherwise tortious conduct.



**Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane**
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

279. Plaintiffs and Class Members exposure may lead to serious health problems, diseases, and medical conditions that may be prevented by timely medical diagnosis and treatment.

280. The method and means for diagnosing the Plaintiffs and Class Members potential medical problems are well accepted in the medical and scientific community and will be of great benefit to the Plaintiffs and Class Members by preventing or minimizing health problems that they may encounter as a result of the defective drywall.

281. As a proximate result of their exposure to sulfide gases and other toxic chemicals from Defendants' defective drywall, Plaintiffs and Class Members have developed a significantly increased risk of contracting a serious latent disease.

282. Monitoring procedures exist that makes the early detection of any latent disease possible that are different from those normally recommended in the absence of the exposure.

283. The prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

WHEREFORE, Plaintiffs, on behalf of all others similarly situated demand injunctive and/or equitable relief against the Defendant as follows:

a. an Order certifying the Class and appointing Plaintiffs as Class Representatives;

b. an order appointing Class Counsel to the represent the Class;

c. an order and judgment requiring the necessary repairs, relocation costs, personal property replacement, establishment of environmental and medical monitoring programs;

d. pre-judgment and post-judgment interest at the maximum rate allowable at law;



Colson Hicks Eidson Colson Cooper Matthews Martínez Gonzalez Kalbac & Kane
255 Aragon Avenue, 2nd Floor, Coral Gables, Florida 33134-5008 Telephone (305) 476-7400 Fax: (305) 476-7444

e. all statutory damages;

f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;

g. the costs and disbursements incurred by Plaintiffs and Class Members in connection with this action, including reasonable attorneys' fees based on the benefits conferred upon the Class, a common fund, statutory, and/or contractual basis;

h. equitable, injunctive, and declaratory relief;

i. pursuant to Rule 23(b)(2) and/or Rule 23(d), Plaintiffs seek notice to Class Members of the defective drywall in their home, need to have the home inspected, and potential health risks associated with the drywall;

j. environmental and air monitoring;

k. medical monitoring; and

l. such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs individually and on behalf of the Class Members, hereby demand a trial by jury as to all issues so triable as a matter of right.

DATED: March 2, 2009.
Miami, Florida

ERVIN A. GONZALEZ
Fla. Bar No. 500720
Ervin@colson.com
PATRICK S. MONTOYA
Fla. Bar No. 524441

Patrick@colson.com
COLSON HICKS EIDSON COLSON
MATTHEWS MARTINEZ GONZALEZ
KALBAC & KANE
255 Aragon Avenue, 2nd Floor
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
*Counsel for Plaintiffs*

Michael D. Hausfeld
Richard S. Lewis
James J. Pizzirusso
Faris Ghareeb
HAUSFELD LLP
1700 K Street, N.W.
Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
*Co-counsel for Plaintiffs*

Arnold Levin
Fred S. Longer
Daniel Levin
Levin, Fishbein, Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
*Co-counsel for Plaintiffs*

Robert Gary
Gary, Naegele & Theado, LLC
446 Broadway
Lorain, OH 44052
Phone: (440) 244-4809
Fax: (440) 244-3462
*Co-counsel for Plaintiffs*

Richard Serpe
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
*Co-counsel for Plaintiffs*

Richard W. Stimson
Attorney at Law
920 Waters Reach Court
Alpharetta, Georgia 30022
Phone: 214-914-6128
*Co-counsel for Plaintiffs*

JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a) PLAINTIFFS**

KAREN VICKERS, FELIX MARTINEZ, JENNY MARTINEZ, JASON SANTIAGO, GEORGE BRINCKU, et. al.

(b) County of Residence of First Listed Plaintiff: Miami-Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)

Colson Hicks Eidson
255 Aragon Avenue, 2nd Floor
Coral Gables, Florida 33134
(305) 476-7400

**DEFENDANTS**

KNAUF GIPS KG, a German Corporation, et. al.

County of Residence of First Listed Defendant: Foreign (German corp.)
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)

*FILED by [signature] D.C. MAR - 2 2009 STEVEN M. LARIMORE CLERK U.S. DIST. CT. S.D. of FLA. - MIAMI*

(d) Check County Where Action Arose: ☑ MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☑ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☑ 6 |

*Dade 09cv 20510 - Gold/McAliley*

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☒ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☒ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS — PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☒ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☒ 380 Other Personal Property Damage
- ☒ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- **Habeas Corpus:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus-Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Re-filed- (see VI below) ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).** (See instructions second page):

a) Re-filed Case ☐ YES ☑ NO b) Related Cases ☐ YES ☑ NO

JUDGE DOCKET NUMBER

**VII. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause **(Do not cite jurisdictional statutes unless diversity):**

28 U.S.C.1332(d)(2) This is a product defect class action relating to defective Chinese drywall, also causing health issues.

LENGTH OF TRIAL via 14 days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $** *Exceeds $5,000,000.00*

CHECK YES only if demanded in complaint: **JURY DEMAND:** ☑ Yes ☐ No

**ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE**

SIGNATURE OF ATTORNEY OF RECORD *[signature]* DATE *3/2/09*

FOR OFFICE USE ONLY

AMOUNT *$350.00* RECEIPT # *996046* *03/02/09*